DAVID G. BANES, Esq., F0171
O'Connor Berman Horey & Banes, LLC
Second Floor, Marianas Business Plaza
P.O. Box 501969
Saipan, MP 96950
Tel.: (670) 234-5684
Fax: (670) 234-5683
Email: *dbanes@pacificlawyers.law*

*Attorneys for Plaintiff*

FILED
Clerk
District Court

APR - 6 2018

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMAD ZEAUR RAHMAN DALU, <br><br> Plaintiff, <br><br> vs. <br><br> MD NURUL ISLAM BHUIYAN dba ISLAND PROTECTION SERVICES, <br><br> Defendant. | CIVIL CASE NO. 18-0012 <br><br> **COMPLAINT WITH DEMAND FOR JURY TRIAL** |

Plaintiff Mohammad Zeaur Rahman Dalu ("**Dalu**"), by counsel, hereby alleges as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction of this matter pursuant to (among others) the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (authorizing Congress to establish this Court), 48 U.S.C. §§ 1821-22 (establishing this Court and granting it the jurisdiction of a district court of the United States), 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. §1367 (supplemental jurisdiction). Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c).

1

2. In particular, the Court has federal question jurisdiction as Plaintiff has alleged (among other claims) substantial causes of action under the Federal Labor Standards Act ("**FLSA**"), the Victims of Trafficking and Violence Protection Act ("**TVPA**"), and Racketeer Influenced and Corrupt Organizations Act ("**RICO**").

3. The Court has supplemental jurisdiction over the other causes of action because they are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

## II.
## PARTIES

4. Dalu is a citizen of Bangladesh residing in the Commonwealth of the Northern Mariana Islands (the "**CNMI**"). Dalu is not a U.S. legal permanent resident.

5. Defendant MD Nurul Islam Bhuiyan ("**Bhuiyan**") dba Island Protection Services ("**IPS**") is, upon information and belief, at all times relevant, a Bangladesh citizen residing in Saipan, CNMI, and operating IPS as a business that provided security guard services to various businesses on Saipan.

## III.
## FACTS

6. From around October 2014 to November 15, 2017, Dalu was employed by IPS as a security guard.

7. Bhuiyan recruited Dalu from Bangladesh in 2014.

8. In June 2014, a brother of Bhuiyan called Motin went to Dalu's family residence in Bangladesh to recruit Dalu to come to Saipan to work for IPS.

9. Upon information and belief, Motin was sent by Bhuiyan.

10. At that time, Dalu met in person with Motin.

2

11. Motin told Dalu he had a brother in the U.S. that had a "big company" and was leading a good life by making $15,000.00 per month, and he could talk to this brother of his to hire Dalu if Dalu wanted to go to the U.S.

12. At first, Dalu refused.

13. Motin persisted in recuiting Dalu by talking to Dalu's mother and brother, and having them relay to Dalu that if he came to work for this brother of his in Saipan, he would get a better life.

14. Motin met with Dalu in person again in the same month.

15. This time, Motin at least got Dalu to give Motin Dalu's phone number.

16. On the same day, around midnight, Dalu received a phone call from Bhuiyan.

17. Bhuiyan told Dalu that he should not waste time living in Bangladesh, that Bhuiyan had a green card and was having a good life in the U.S., and that if Dalu came, Dalu could make more money and have a better life, and Bhuiyan would get Dalu a green card.

18. Bhuiyan told Dalu normally he would charge a recruiting fee of 2 million Taka, but he was willing to accept 1.8 million Taka.

19. Dalu and his family negotiated it down to around 1.5 million Taka (which is about $18,000.00).

20. Relying on Bhuiyan's representations and promises, Dalu agreed to come to Saipan to work for him.

21. Dalu's family paid about 1.2 million Taka, as a loan to Dalu, towards the recruiting fee.

22. Around June and July 2014, Motin presented a written employment agreement from IPS to Dalu.

23. The employment agreement was already signed by Bhuiyan.

3

24. Upon information and belief, it was Bhuiyan who instructed Motin to present the employment agreement to Dalu for IPS.

25. The employment agreement promised Dalu that he would be paid a wage at least equal to the legally required wage rate and overtime pay at 1.5 times his regular rate.

26. Dalu signed the employment agreement, and later went through CW-1 visa processing to come to Saipan.

27. Another brother of Bhuiyan's, called Faruq, guided Dalu through the visa processing.

28. Dalu arrived in Saipan in September 2014, and two weeks later, started to work at IPS.

29. In June 2015, one day, Bhuiyan came to Dalu and gave him a plane ticket to go back to Bangladesh.

30. He told Dalu if he did not leave right away, the Department of Home Security would arrest him.

31. When Dalu asked why, Bhuiyan told him his CW-1 visa had expired and he needed to get a new CW-1 visa to come back to Saipan.

32. Dalu left Saipan on the same day.

33. After Dalu was back in Bangladesh, Bhuiyan told Dalu if the balance of the recruiting fee was not paid, IPS would not bring Dalu back to Saipan.

34. Again, as a loan to Dalu, Dalu's family paid Bhuiyan.

35. Then, Bhuiyan went to Bangladesh in person to give Dalu an employment agreement from IPS, under which, like the previous one, Dalu would get a wage rate at least equal to the legal required wage rate, and overtime pay at 1.5 times his regular rate.

36. IPS sponsored Dalu's CW-1 visa for him to come back to Saipan.

37. Dalu came back to work for IPS in November 2015, and continued to work there until around November 15, 2017.

38. During Dalu's employment, IPS renewed his CW-1 visa multiple times, and each time, Bhuiyan told Dalu that Dalu had to pay the renewal fee.

39. Dalu paid the renewal fees.

40. During Dalu's employment with IPS, Dalu would always work more than 40 hours a week, and on average, worked around 60 hours per week.

41. During Dalu's employment with IPS, IPS assigned Dalu to various businesses on Saipan, such as hotels, banks, supermarkets, tourist spots (such as the Banzai Cliff and the Suicide Cliff), and construction sites (including the Best Sunshine Garapan construction site), and Dalu's job duties were (among others) to conduct access control at entry/egress points of the assigned area, and detect and report unauthorized entry and suspicious activities.

42. For Dalu's employment with IPS, he should be paid at least a total of at least $57,000.00 in wages under his employment agreement.

43. IPS did not pay Dalu the contractual wage for regular time, or overtime pay.

44. It paid Dalu a total of about $25,000.00.

45. IPS never started the process of sponsoring a green card for Dalu.

46. At the time of having Motin presented the employment agreement to Dalu in 2014, Bhuiyan did not have the intention of paying the wage stated in the employment agreement.

47. At the time of telling Dalu if he came to Saipan, he would get a better life and a better paying job in the U.S., Bhuiyan planned to exploit Dalu by underpaying him once he came to Saipan.

48. At the time of telling Dalu if he came to Saipan, Bhuiyan would get him a green card, Bhuiyan had no intention to do so, and IPS did not meet the legal requirements for an employer to sponsor green card applications.

49. Upon information and belief, at the time of making the false representations and promises, Bhuiyan expected and intended that by having Dalu pay the huge recruiting fee, he would put Dalu in a position that would at least financially force him to work for IPS even if IPS underpaid Dalu and did not get Dalu a green card.

50. Dalu did not know the falsity of Bhuiyan's representations and promises.

51. Dalu reasonably relied upon those representations and promises in agreeing to come to Saipan to work for Bhuiyan and borrowing money to pay the recruiting fee.

52. However, despite being cheated, underpaid, and sent back once to Bangladesh, Dalu had no choice but to continue to work for IPS.

53. In order to pay the recruiting fee, which was over 16 times of the average annual income of a Bangladeshi, Dalu incurred a huge debt.

54. To lend money to Dalu, Dalu's family had to sell their family properties, and had become poor and dependant on Dalu's income.

55. In addition, by coming to Saipan to work as a security guard, Dalu damaged his career prospects in Bangladesh.

56. Dalu felt he had no choice but to continue to work for IPS in order to pay off the debt and to support his family.

57. While he was in Saipan working for IPS, Dalu complained to Bhuiyan about being underpaid many times.

58. Bhuiyan threatened Dalu that IPS would stop employing Dalu and Dalu would be deported to Bangladesh.

6

59. Once, after Dalu complained about being underpaid, Bhuiyan took a machete from his car and threatened to kill Dalu.

60. In March 2018, Bhuiyan, knowing Dalu is now pursuing legal redress against IPS, threatened Dalu's family in Bangladesh that Bhuiyan would use his family's influence to make their lives miserable and to harm them if Dalu does not stop "fucking with [Bhuiyan].

## IV.
## CAUSES OF ACTION

### First Cause of Action

### Violations of FLSA

61. Dalu re-alleges and incorporates herein all the foregoing paragraphs as if restated in full here.

62. Upon information and belief, at all times relevant, IPS had employees engaged in commerce or in the production of goods for commerce, and/or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person, such as portable radio transceivers (walkie-talkies), flash lights, and/or handguns that had been moved in or produced for interstate commerce.

63. Upon information and belief, at all times relevant, IPS had a gross annual revenue of over $500,000.00.

64. Therefore, Dalu was covered under FLSA under enterprise coverage.

65. In addition, at all times relevant, Dalu's job duties were closely related and directly essential to the continuous of movement of persons and goods in interstate commerce.

66. Dalu's job duties required him to control access of foreign tourists transported by airplane to the CNMI and then transported, as an integral part of their purchased travel package and in a continuous stream, to areas guarded by him such as hotels, restaurants, and supermarkets, and access of materials (such as construction materials) imported into the CNMI

7

and transported, also in a continuous stream, to areas guarded by him such as construction sites, before those persons and materials reached their final destination in their interstate movement.

67. In addition, upon information and belief, at all times relevant, in the areas guarded by Dalu, services or goods involved in interstate commerce were being provided or manufactured, and the duties performed by Dalu were an integral part of it.

68. Therefore, Dalu was covered under FLSA under individual coverage as well.

69. At all times relevant, Dalu was never an exempt employee under FLSA.

70. Under the FLSA, Dalu should be paid an aggregate wage of at least $57,000.00 for his employment with IPS (including regular time and overtime).

71. IPS violated the FLSA by paying Dalu only an aggregate total of around $25,000.00.

72. IPS knew the requirements of FLSA, and intentionally and willfully violated FLSA.

73. Dalu is entitled to recover the unpaid wages from IPS.

74. Dalu is also entitled to recover liquidated damages in an amount equal to the deficiency, as well as reasonable attorneys' fees and costs of litigation.

75. Dalu spoke limited English and knew little about U.S. law.

76. During his employment with IPS, Dalu did not know that he had the right to receive the minimum wage and overtime compensation under FLSA.

77. A reasonable person in Dalu's circumstances would not have realized that he had the right to receive the minimum wage and overtime compensation under FLSA.

78. Dalu did not learn of his rights under FLSA until around the time his employment with IPS ended.

79. Within a reasonable time after Dalu learned of his rights under FLSA, Dalu acted diligently in pursuing his rights.

80. Therefore, Dalu is entitled to equitable tolling of his claim under FLSA.

## Second Cause of Action

## Violations of TVPA

81. Dalu re-alleges and incorporates herein all the foregoing paragraphs as if restated in full here.

82. IPS violated TVPA's prohibition of forced labor by physically, psychologically, and financially forcing Dalu to continue to work for IPS despite being underpaid.

83. Upon information and belief, this was not an isolated incident with IPS but a long-standing practice of IPS.

84. Upon information and belief, IPS's scheme of fraudulently inducing Bangladeshis into coming to Saipan and forcing them to work for IPS despite being underpaid was intentionally planned by Bhuiyan, and is still on-going.

85. IPS also violated TVPA's prohibition of human trafficking to further forced labor, by knowingly recruiting, harboring, transporting, providing, or obtaining Dalu for forced labor.

## Third Cause of Action

## Violations of RICO

86. Dalu re-alleges and incorporates herein all the foregoing paragraphs as if restated in full here.

87. Upon information and belief, IPS, as a business, and the three brothers, Bhuiyan, Motin and Faruq, associated together and operated an associated-in-fact enterprise of fraudulently inducing Bangladeshis into paying exorbitant recruiting fees in exchange for being

sponsored by IPS to come to work in Saipan, and physically, psychologically, and financially forcing them to continue to work for IPS despite being underpaid.

88. Upon information and belief, Motin and Faruq knew IPS's long-standing practice of exploiting Bangladeshi workers and intentionally participated in it.

89. Upon information and belief, Motin, Faruq, and Bhuiyan had the common purpose of exploiting Bangladeshis as cheap labor for profits.

90. At all times relevant, Motin and Faruq would help Bhuiyan with communications with the Bangladeshis to be recruited, participate in negotiations about recruiting fees, and/or assist with visa processing so that the workers could come to Saipan.

91. Upon information and belief, Bhuiyan, Motin, and Faruq, acting together over a span of more than three years, fraudulently induced the following Bangladeshis into coming to Saipan and/or forcing them to work for IPS while being underpaid:

    a. MD Rabi Ullah;

    b. MD Shahidul Islam;

    c. Billal Hossen Sarkar;

    d. Abdullah Al Mamun;

    e. Shomon Ullah Monshi;

    f. Hemayet Hossen;

    g. Abdullah Al Mahamud;

    h. Mohammed Masum Billah;

    i. Maksudur Rahman;

    j. MD Solaiman Munshi;

    k. Nassir Uddin;

    l. Amir Rasool; and

m. Syful Islam.

92. Upon information and belief, at all times relevant, Bhuiyan was the head of the associated-in-fact enterprise.

93. As a direct and proximate result of the fraud, forced labor, and human trafficking perpetrated by the enterprise of IPS, Bhuiyan, Motin, and Faruq, Dalu suffered injuries, including without limitation, economic loss from unpaid wages and paying exorbitant recruiting fees.

## Fourth Cause of Action

## Breach of Contract

94. Dalu re-alleges and incorporates herein all the foregoing paragraphs as if restated in full here.

95. At all times relevant, Dalu had a valid and enforceable employment agreement with IPS under which IPS was to pay Dalu a wage at least equal to that under FLSA and overtime pay at 1.5 times of the regular wage.

96. Dalu had performed and satisfied all conditions, promises, and obligations that were required for him to perform to receive the contractual wage rate set forth in the agreement.

97. IPS breached the employment agreement by failing to pay Dalu the contractual wage rates.

98. Dalu is entitled to recover the unpaid contractual wages.

99. The aggregate amount that Dalu is entitled to recover under his breach-of-contract claim and the other state law claims stated herein, exclusive of interest and costs, exceeds $75,000.00.

## Fifth Cause of Action

### Violations of the Commonwealth Minimum Wage and Hour Act ("MWHA")

100. Dalu re-alleges and incorporates herein all the foregoing paragraphs as if restated in full here.

101. IPS violated MWHA, 4 CMC § 9211 *et seq.*, by: (1) failing to pay Dalu the minimum wage mandated by 4 CMC § 9221; and (2) failing to pay the overtime wage mandated by 4 CMC § 9222.

102. Under MWHA, Dalu should be paid an aggregate wage of at least $38,000.00 for his employment with IPS (including regular time and overtime).

103. IPS violated MWHA by underpaying Dalu.

104. Dalu was not an exempt employee under MWHA.

105. IPS knew the requirements of MWHA, and intentionally and willfully violated MWHA.

106. Dalu had limited knowledge of CNMI law.

107. During his employment with IPS, Dalu did not know that he had the right to receive the minimum wage and overtime compensation under MWHA.

108. A reasonable person in Dalu's circumstances would not have realized that he had the right to receive the minimum wage and overtime compensation under MWHA.

109. Dalu did not learn his rights under MWHA until around the time his employment with IPS ended.

110. Within a reasonable time after Dalu learned of his rights under MWHA, he acted diligently in pursuing his rights.

111. Therefore, Dalu is entitled to equitable tolling of his claim under MWHA.

112. Dalu is entitled to recover the unpaid minimum wage and overtime compensation from IPS for the entire period of her employment.

113. Dalu is also entitled to recover reasonable attorney's fee, and the cost of this action under 4 CMC § 9244(b).

114. In addition, because IPS's violations were willful, Dalu is entitled to recover liquidated damages in an amount equal to the sum of unpaid minimum wage and overtime compensation.

### Sixth Cause of Action

### Fraud

115. Dalu re-alleges and incorporates herein all the foregoing paragraphs as if restated in full here.

116. Bhuiyan fraudulently represented to Dalu that if he came to Saipan to work for IPS, he would get a good life with a good pay.

117. Bhuiyan fraudulently promised to Dalu that IPS would pay him at least the minimum wage under federal and CNMI law, even though he had no intention to honor this promise.

118. Bhuiyan fraudulently promised to Dalu that IPS would get a green card for Dalu, even though he had no intention to do so.

119. At the time those representations and promises were made, IPS planned to underpay Dalu once he came to Saipan and physically, psychologically, and financially forced him to continue to work for IPS.

120. Dalu did not know the falsity of Bhuiyan's representations and promises.

121. Dalu reasonably and justifiably relied on them.

122. As a result, Dalu had to incur a huge debt and put himself into a financial situation in which he felt he had no choice but to continue to work for IPS or otherwise he would never be able to pay off his debt and support his family.

123. As a direct and proximate cause of Dalu's reliance on IPS's misrepresentations and false promises, Dalu suffered economic damages, including without limitation paying a substantial recruitment fee.

### Seventh Cause of Action

### Unjust Enrichment

124. Dalu re-alleges and incorporates herein all the foregoing paragraphs as if restated in full here.

125. Bhuiyan received benefits from Dalu in the form of Dalu's labor and services and the value produced by such labor and services to IPS's business, as well as the recruiting fee and renewal fees paid by Dalu.

126. Bhuiyan retained those benefits at Dalu's expense, in particular because IPS did not pay Dalu the contractual wage rate, the legally required minimum wage rates, or the legally required overtime compensation.

127. It is contrary to equity and conscience to allow Bhuiyan to retain the benefits that he received at Dalu's expenses.

WHEREFORE, Dalu prays the Court to grant him the following relief:

a. For unpaid contractual and legal minimum wages, and overtime compensation, all in amounts to be proved at trial;

b. Liquidated damages in amounts as provided under FLSA and MWHA;

c. Actual and consequential damages, and treble damages under RICO;

d. Restitution for unjust enrichment;

e. Punitive damages;

14

f.  Costs and reasonable attorney's fees; and

g.  Such other and further relief as the Court deems just and proper.

Dalu demands jury trial.

Respectfully submitted this 6th day of April, 2018.

        O'CONNOR BERMAN HOREY & BANES, LLC
        *Attorneys for Plaintiff*

By:   /s/
     David G. Banes, Esq.